NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**13-880
consolidated with 13-881**

**STATE OF LOUISIANA**

**VERSUS**

**TYRONE A. MURRAY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 155,970
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Charles A. Riddle, III**
**District Attorney**
**Miché Moreau**
**Assistant District Attorney**
**Post Office Box 1200**
**Marksville, Louisiana 71351**
**(318) 253-6587**
**Counsel for Appellee:**
      **State of Louisiana**

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
      **Tyrone A. Murray**

**Tyrone A. Murray**
**In Proper Person**
**Allen Correctional Center**
**3751 Lauderdale Woodyard Road**
**Kinder, Louisiana 70648**
**Defendant**

**KEATY, Judge.**

In this consolidated appeal, Defendant, Tyrone A. Murray, appeals from the trial court's ruling that the State provided a sufficient factual basis to support his guilty pleas to charges that he molested a juvenile and committed oral sexual battery. For the following reasons, we find no merit to Defendant's appeal and, thus, affirm his convictions and sentences.

## PROCEDURAL HISTORY

On April 15, 2010, Defendant was indicted for aggravated rape, a violation of La.R.S. 14:42, under lower court docket number 155,970; for oral sexual battery, a violation of La.R.S. 14:43.3, under lower court docket number 155,971; and for molestation of a juvenile, a violation of La.R.S. 14:81.2, under lower court docket number 155,972.

On May 17, 2011, Defendant pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), to one count of molestation of a juvenile, reduced from aggravated rape, and one count of oral sexual battery. The original molestation of a juvenile charge under docket number 155,972 was *nolle prosequied*. Defendant was sentenced on the same date to twenty-five years on each conviction without the benefit of probation, parole, or suspension of sentence to be served concurrently.

On June 27, 2011, Defendant filed a *pro se* "Motion For Withdrawal of Guilty Plea" under both remaining docket numbers. After a December 13, 2011 hearing, Defendant's motions were denied. Defendant filed two separate appeals in this court and asked that they be consolidated. However, this court dismissed the appeal of docket number 155,971 because the docket number was not included on the motion for appeal. *See State v. Murray*, 12-378 (La.App. 3 Cir. 5/23/12), 92

So.3d 591, *writ granted, case remanded*, 12-1414 (La. 12/14/12), 104 So.3d 419. Defendant applied for writs with the Louisiana Supreme Court, challenging the dismissal of his appeal. This court withheld ruling on the appeal of docket number 155,970 pending the supreme court's ruling. On December 14, 2012, the supreme court reinstated Defendant's appeal of docket number 155,971 and remanded the matter with instructions to consolidate the two appeals. *Id.* This court consolidated the matters on January 14, 2013.

Defendant appealed his convictions on the grounds that his guilty pleas were not knowingly and intelligently made. He asserted that he was not advised of the requirements regarding sex offender registration and notification. He argued that the trial court erred in denying his motion to withdraw his guilty pleas. In *State v. Murray*, 12-378, 12-379, p. 8 (La.App. 3 Cir. 4/3/13), 117 So.3d 130, 136, this court conditionally affirmed the convictions and sentences but remanded the matter to the trial court:

> to conduct an additional *Boykin*[1] hearing, within forty-five days of the date of the opinion, to allow the State the opportunity to present a sufficient factual basis for the guilty pleas to oral sexual battery and molestation of a juvenile. Further, we instruct the trial court to vacate the pleas and sentences in the event that the State fails to present a sufficient factual basis for the pleas.

The trial court held a post-trial motion hearing as ordered by this court on April 23, 2013. Following the hearing, the trial court ruled that the State provided a sufficient factual basis to support the guilty pleas to the offenses of molestation of a juvenile and oral sexual battery pursuant to the requirements of *Alford*.

Defendant now appeals, alleging that the trial court erred: 1) in failing to allow him and defense counsel adequate time to prepare for the additional *Boykin*

---

[1] *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

hearing; and 2) in not properly evaluating the case after considering the factual basis presented by the State and Defendant's assertions of both innocence and possession of exculpatory evidence to determine whether there was a sufficient factual basis to accept his *Alford* pleas.

## DISCUSSION

The State presented the following factual basis for Defendant's guilty pleas at the April 23, 2013 hearing:

> [I]n order to prove that the defendant was over the age of seventeen the detective on the case could have testified that he was born August 29, 1985. In order to prove that a lewd or lascivious act upon the person of the victim, [D.A.[2]], the testimony of the victim would have been that the defendant put his penis in her mouth, that the defendant put his penis inside her anus, and that the defendant put his finger in her vagina and told her not to tell anyone. . . .
>
> . . . .
>
> [We also] would have had the testimony of Dr. Mayeux, the coroner who examined the six year old victim who would've testify [sic] that . . . her hymenal [sic] ring was dilated with a held [sic] scar at eleven o'clock, also he examined her rectum and it showed dilation violation and a healed scar at the midline at twelve o'clock . . .
>
> . . . .
>
> In order to establish that the victim was under the age of seventeen and that there was an age difference of greater than two years the state would have had the testimony of the victim and the grandmother to indicate her age was six years old at the time. In order to establish that the defendant had a position of supervision or control over the juvenile and was able to complete this lewd and lascivious act by virtue of being in a position of control of supervision, we would have had the testimony of the grandmother and the victim that the defendant babysat the victim when the mother was at work and the abuse happened while the mother was at work. In addition the defendant admitted to the detective investigating the case that he was often alone with the victim.

---

[2] Initials of the victim are used in the statement of facts to protect her identity as required by La.R.S. 46:1844(W).

In order to establish the charge of oral sexual battery we would have the testimony of the victim and the grandmother to show her age as being six years[] old under the age of fifteen and not the spouse of the defendant. In order to establish the oral sexual battery occurred we would have had the testimony of the victim that the defendant put his penis in her mouth without her consent.

## *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After review, we have found no errors patent.

## *Assignments of Error*

Defendant argues that the trial court did not allow him or his defense counsel enough time to prepare for the hearing. He argues that while he is guaranteed the right to effective counsel by the Sixth Amendment at all relevant proceedings in a criminal prosecution, the record does not indicate that he "had a meaningful opportunity to discuss the matter with appointed counsel and to present to appointed counsel the evidence he had to counter the State's factual basis." Furthermore, he argues that the factual basis as stated by the State was insufficient because he had exculpatory evidence.

At the post-trial motion hearing, the trial court noted that Defendant appeared without counsel and asked if Defendant would like appointed counsel, to which Defendant answered affirmatively. The trial court then appointed Mr. Bradley Dauzat, Chief Public Defender of the Avoyelles Parish Public Defender's Office, to represent him. The trial court advised Mr. Dauzat of the purpose of the hearing as ordered by this court and ascertained that Defendant had a file that Mr. Dauzat could review. The trial court then recessed. As noted by both Defendant and the State, there is nothing in the record to indicate how long

4

the recess lasted. However, when back on the record, Mr. Dauzat advised the trial court that he and another public defender from his office, Mr. Whittington, had spoken with Defendant. Thereafter, Defendant objected, stating "We didn't talk about nothing about what's going on today." The trial court then allowed the State to finish presenting the factual basis, after which it allowed Defendant to put his objections on the record. Defendant testified that his retained trial counsel failed to give him copies of all discovery, even after he complained to the disciplinary board. Defendant further claimed that it would have been impossible for a grown man such as him to commit the charged crimes upon a six-year-old girl without causing more serious harm than that alleged by the victim. Finally, Defendant claimed that the State had withheld exculpatory evidence that would have shown that the victim was never alone with him. Defendant admitted that he had messed up earlier in his life, and he apologized for that. Nevertheless, he maintained that he was innocent of the charges that he had pled guilty to in the instant case.

There is nothing in the record before this court to indicate that appointed counsel at the post-trial motion hearing was ineffective in his representation, considering that the purpose of the hearing was to allow the State to put into the record the factual basis of the crimes to which Defendant pled guilty, to determine whether the factual basis was sufficient, and nothing more. Defendant did most of the talking during the hearing, and Mr. Dauzat objected to the trial court's ruling at the conclusion of the hearing, thereby preserving the issues for appeal.

Following recitation by the State of the evidence it could have presented at trial and the lengthy diatribe by Defendant, the trial court noted that the State presented a sufficient factual basis to support the guilty pleas pursuant to the requirements of *Alford*.

In *State v. J.S.*, 10-1233, p. 2 (La.App. 3 Cir. 5/11/11), 63 So.3d 1185, 1187-88, this court noted the following regarding the requirements of an *Alford* plea:

> The "best interest" or *Alford* plea, which derives from the United States Supreme Court case of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), is one in which the defendant pled guilty while maintaining his innocence. In *Alford*, the Supreme Court ruled that a defendant may plead guilty, without forgoing his protestations of innocence, if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to defendant[,] . . . especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id.*, 400 U.S. at 31, 91 S.Ct. at 164; *State v. McCoil*, 2005-658 (La.App. 5th Cir.02/27/06), 924 So.2d 1120. In a case involving an *Alford* plea, the record must contain "strong evidence of actual guilt." *Id.*, 400 U.S. at 38, 91 S.Ct. at 167; *State v. McCoil, supra*;

*State v. Stevenson,* 45,371, pp. 4-5 (La.App. 2 Cir. 6/23/10), 41 So.3d 1273, 1277.

> Furthermore, when a defendant claims innocence and still makes an *Alford* plea, the trial court is put on notice that a substantial basis of guilt must be placed into the record. *State v. Villarreal*, 99-827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 129, *writ denied*, 00-1175 (La.3/16/01), 786 So.2d 745.

> [T]he standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses, but rather whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea "represents a voluntary and intelligent choice among the alternative[s]." *Id.* 400 U.S. at 31, 91 S.Ct. at 164.

*State v. Orman*, 97-2089, pp. 1-2 (La.1/9/98), 704 So.2d 245, 245.

The issue currently before this court is whether Defendant's guilty pleas were voluntarily and knowingly made. In brief, the State points out that the issue of an alleged recantation by the victim was addressed at the December 2011 hearing. After waiving the attorney/client confidentiality, George Higgins,

6

Defendant's retained counsel at the time he pled guilty and was sentenced, testified that the alleged recantation of the victim was in a video tape obtained by Defendant's family. Mr. Higgins testified the tape did not contain a recantation. He also testified that the plea bargain offered by the State included the agreement not to charge Defendant as a habitual offender, which could have resulted in at least a sixty-six year sentence if the jury had found any of the responsive verdicts applied. Mr. Higgins testified that based on the strength of the State's case, the fact that aggravated rape carries a mandatory life sentence and that, in his professional opinion, Defendant would be found guilty as charged, he recommended that Defendant accept the State's offer to plead guilty to the lesser offense of molestation of a juvenile and the offense of oral sexual battery and receive concurrent sentences of twenty-five years imprisonment.

Freeman Ford also testified at the motion to withdraw guilty plea hearing. Mr. Ford, at the time a legal assistant at the public defender's office, was a thirty-six year veteran of working cases wherein defendants were charged with sex crimes. He stated that on the day before trial, he, separately and together with Mr. Higgins, discussed Defendant's case with him and that he supported Mr. Higgins' recommendation to accept the plea offer. According to Mr. Ford, he and Mr. Higgins told Defendant to sleep on it. The next morning, the day trial was to commence, Defendant decided to take the plea offer.

Defendant testified at the motion to withdraw guilty plea hearing and denied that he ever wanted to accept the offer. However, he did not explain why he pled guilty even though he did tell the trial court during the *Boykin* hearing he was innocent, but "Man . . . I'm gonna just go with it." Following Defendant's testimony, the trial court questioned him extensively regarding whether he believed

7

Mr. Higgins gave him good advice.  Defendant admitted that considering the facts of the case and consequences he was facing, Mr. Higgins gave him good advice.

At the conclusion of the December 13, 2011 hearing on Defendant's motion to withdraw the guilty pleas, the trial court stated:

BY THE COURT:

Out of Mr. Murray's own mouth, here today, he included that the advice given by Mr. Higgins and the advice given by Mr. Ford who has 36 years of experience in the Twelfth Judicial District Court both in the prosecutor[']s office for twenty some odd years or 30 years and then in the public defender's office and Mr. Murray admits that that advice was good advice.  And it was in his best interest to take the plea at the time.

Mr. Murray is now coming into court and saying hey, I made a mistake, I didn't do it, I didn't commit the crime, and I shouldn't have taken the plea, I'd rather take my chances which what would end up happening any lawyer worth his salt what would evaluate the case, again, would probably give the same advice.

Mr. Murray, you're going to get 25 years instead of in all likelihood the rest of your life in prison, you have the chance of having a future.  We must also remember that this is Mr. Murray's third felony conviction and all three of which today, he still maintains, in spite of testifying under oath that he did them, and even testifying today that as the first two, he was guilty as a principle [sic], he's still saying he was not guilty today and now saying that although he pled guilty to these offenses, he is not guilty.  That's again the third time that he has pled guilty to felonies and he's saying no, I did not do it.

I fear for Mr. Murray in the event that I would allow him to withdraw his guilty plea, based on the testimony I've heard here today, Mr. Murray would be back where he was and in all likelihood, have a most unfortunate and disastrous result.  He has not shown on today that the [B]oykin [examination] was defective, he has not shown anything but that he had effectiveness of representation by George Higgins and the help of Mr. Freeman Ford in advising him even Mr. Higgins or Mr. Ford, I'm sorry, confirming that one of his family members acknowledged that it was in his best interest to take this plea.

If every time a defendant who stands in court and pleads guilty then comes and says . . . and wants to withdraw because they say later they didn't do it, we would be besieged with such cases.  Mr. Murray in this case simply has not met his burden to prove that anything was

done incorrectly, he received excellent representation, he made a knowing, intelligently . . . a knowing and intelligent appearance in his [B]oykin examination and he has failed to provide here today, any legal basis for me to allow him to withdraw his plea of guilty.

Considering the strength of the State's case as demonstrated by the factual basis set out above, coupled with the fact that Defendant was facing life imprisonment, or at the minimum, several more years than the twenty-five years he received, the record reflects that Defendant's plea was voluntary and an intelligent choice among the alternatives.

## DECREE

The factual basis as presented by the State was sufficient to support Defendant's *Alford* plea of guilty of the offenses of molestation of a juvenile and oral sexual battery. Accordingly, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.